

# NUMBER 13-21-00387-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JESUS ABIDES CAMPOS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Silva**

Jesus Abides Campos appeals his convictions of manslaughter, a second-degree felony, and aggravated assault family violence with a deadly weapon, a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 19.04, 22.02(b)(1). He was sentenced to concurrent twenty-year prison terms. By a single issue, Campos argues that the judicial confession,

written stipulation of evidence, and corresponding admitted evidence is insufficient to support his "guilty" plea. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15. We affirm.

## I. BACKGROUND

On February 11, 2020, Campos appeared before the trial court to enter his pleas of guilty to both counts as indicted without a plea bargain agreement. To accompany Campos's guilty plea, the State introduced documents entitled "WAIVER OF RIGHTS & CONSENT TO STIPULATION OF EVIDENCE AND/OR TESTIMONY & PLEA OF GUILTY OR NO CONTEST" signed by Campos, wherein he asserted:

> I freely and voluntarily plead GUILTY, and I admit I committed each and every element of every offense alleged in the indictment or information, namely, AGG ASSAULT DATE/FAMILY/HOUSE W/WEAPON, FELONY 1ST DEGREE, committed on July 20, 2018.
>
> . . . .
>
> I freely and voluntarily plead GUILTY, and I admit I committed each and every element of every offense alleged in the indictment or information, namely, MANSLAUGHTER, FELONY 2ND DEGREE, committed on July 20, 2018.

Thereafter, the following colloquy occurred between Campos and the trial court:

> THE COURT: . . . Now, in addition to these rights that you are waiving by signing these same documents, you are also giving a judicial confession where you are admitting having committed these offenses as charged, sir. Do you understand that?
>
> [CAMPOS:] Yes, sir.
>
> THE COURT: You're asking me to consider your confession as part of your plea here this morning, sir?
>
> [CAMPOS:] Yes, sir.
>
> THE COURT: Very well. I will do so.

In addition to Campos's written waiver of rights, judicial confession, and stipulation of evidence, the State offered offense reports, autopsy reports, witness statements, and a ballistics report. We summarize the admitted evidence below.

On the evening of July 20, 2018, following reports of an "accidental shooting," McAllen Police Department (MPD) officers were dispatched to Campos's residence, where he resided with his then-girlfriend MPD Officer Monica Trevino. Campos told officers that he had just finished assembling his "assault rifle" when he placed a loaded 20-round magazine into the rifle, intending to take pictures with it. Campos stated he accidentally pulled the trigger and shot Trevino in the stomach. Trevino, eight months pregnant, was transported to a nearby hospital where an emergency cesarean section was performed; however, the child did not survive. Autopsy findings indicated the child died as a result of a gunshot wound. The medical examiner noted a "gaping entrance" along the child's right torso and the projectile "perforating and fragmenting the liver, right kidney, . . . and right colon."

In a statement to police provided two days later, Campos maintained he had been doing a "functions check" and did not intentionally pull the trigger. Campos declined to demonstrate how he performed a functions check and confirmed he owns several firearms and has a license to carry.

Trevino provided a statement to law enforcement on August 3, 2018, wherein she confirmed she had been pregnant with Campos's child. According to Trevino, the two began dating in late 2017, they moved in together in November of 2017, and she became pregnant in December of 2017. Trevino stated Campos was initially happy about the

3

unexpected pregnancy, but in February of 2018, Campos began expressing his dissatisfaction with their relationship and making comments about not wanting to be involved in raising their child. In late May of 2018, Trevino became aware of Campos's ongoing infidelity, which purportedly began five months prior. Trevino stated that when she confronted Campos, he assaulted her, leaving her with a black eye. Trevino's physician noted bruising to Trevino's face during an appointment on June 1, 2018.

On July 19, 2018, the evening prior to the shooting, Trevino and Campos had been in an argument regarding her suspicions of Campos's continued infidelity. Trevino stated Campos was still upset the following day and confirmed that Campos had been working on his rifle when she heard a "distinct metal on metal" sound as she was walking past him. Trevino recalled that she turned to face Campos, saw him slightly bent forward with the gun pointed in her direction, and then heard a "loud bang." Trevino said she asked Campos to call 911 and saw him grab his phone, but when he did not begin to dial 911, she asked him to retrieve her police radio. Trevino used her police radio to report the shooting. Trevino stated Campos never attempted to render aid and was preoccupied with asking her whether she believed he was going to be arrested.

The trial court accepted Campos's pleas of guilt, ordered a presentence investigation report, and reset the case for a sentencing hearing.[1] Campos never sought to withdraw his guilty plea.

During sentencing, text messages between Trevino and Campos were admitted,

---

[1] For reasons unclear from the record, twenty months elapsed between Campos's plea submission and sentencing date. Campos remained out on bond throughout this period.

4

depicting their strained relationship. In February of 2018, Campos told Trevino that he was "done" with their relationship, and he complained that he "make[s] less now" and had "made a mistake getting [her] prego [sic] so soon." In another string of text messages from April of 2018, Campos berated Trevino for talking to him "liek thatin [sic] front of [her] mom"; he told her he hated her and to "[g]o f[-]ck [her]self"; and after she asked for her cell phone back, he said she would "get [her] phone when [she] g[a]ve [him his] gun." Messages from June of 2018 were also admitted, wherein Campos accused Trevino of being unfaithful and the following colloquy occurred:

> [CAMPOS:]  I[ a]m f[-]cking mad[.]
>
> I[ a]m capable of hurting [yo]u right now[.]
>
> I[ a]m not getting back with [yo]u[.]
>
> I[ a]m boiling[.]
>
> Does[]not matter[.]
>
> After knowing [yo]u dated and f[-]cked a coworker [I] think low of [yo]u[.]
>
> [TREVINO:]  Wow . . . [yo]u cheated on me for six months and because of one of my ex's from years ago[, yo]u are upset?
>
> [CAMPOS:]  [You] disgust me[.]
>
> Just leave.
>
> Please.
>
> [TREVINO:]  I'm not cheating!
>
> I never did!

On the day of the shooting, Campos accused Trevino of "hacking" his phone, told her he was "done," and said he was coming over to collect his belongings. The two reconciled

5

only to begin exchanging expletive text messages two hours later, with Campos telling Trevino he was "[f-]cking pissed" that she had changed the password on her home doorbell camera.

Several witnesses also testified during sentencing, including Trevino and Campos. Campos stated that many of his text messages had been sent "in the moment of anger" and denied ever intentionally physically hurting Trevino. Campos characterized his actions on July 20, 2018, as "reckless," stating that he had inserted the magazine to "show [Trevino]" and that is "what caused the gun to slam fire." In contrast to his prior statements to police, Campos testified the gun "instantly fired" after he put the magazine in and denied ever pulling the trigger.[2] Campos explained that he initially delayed calling 911 because after "the gun went off, it fired to [Trevino] and she was yelling, she was screaming," leaving him "in shock" and unable to "process what had happened."

Trevino testified that, though she initially told emergency personnel that she had been shot accidentally, upon further reflection, she believes Campos acted intentionally:

[TREVINO:]  I remember him standing. He stood up, and I asked him, why did he shoot me? And he didn't say anything. And he walked towards me but he never touched me, he never came directly close to me. And I told him it hurt so bad. And I told him the baby was dead. I couldn't feel [the baby] move anymore. And then he asked me, ["A]m I going to get arrested? Am I going to go to jail?["]

[STATE:]  He asked you that?

[TREVINO:]  Yes, he did.

[STATE:]  Before asking you anything about yourself, that was the first

---

[2] Campos's recorded interview with police was admitted at sentencing, and in it, he admitted to pulling the trigger.

thing he asked you?

[TREVINO:] He never helped me.

[STATE:] And when he asked you if he was going to get arrested, what did you respond?

[TREVINO:] I looked at him and I couldn't believe that he asked me that instead of asking if I was okay. I told him no, but I didn't know what I was supposed to tell him.

The trial court sentenced Campos to twenty years' imprisonment for each count, with the sentences to run concurrently. This appeal followed.

## II.    DISCUSSION

In his sole issue, Campos contends the trial court erred in accepting his guilty pleas because the requirements for a judicial confession and stipulation of evidence were not met, and the evidence offered by the State in support of the pleas was insufficient to comply with Article 1.15 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15.

Article 1.15 governs sufficiency of the evidence when a defendant pleads guilty in a noncapital felony case. *Id.* It provides in relevant part that

> it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same.

*Id.* Evidence is considered sufficient under Article 1.15 when "it embraces every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Moreover, Article 1.15 evidence may take "many forms," including (1) a defendant's consent to an oral or written stipulation of what the evidence against him

7

would be, without necessarily admitting to its veracity of accuracy; or (2) a defendant testifying under oath in open court, specifically admitting his culpability or, at minimum, generally acknowledging that the allegations against him are true and correct. *See id.*; *see also Reese v. State*, No. 13-13-00616-CR, 2015 WL 4381223, at *3–4 (Tex. App.— Corpus Christi–Edinburg July 16, 2015, pet. ref'd) (mem. op., not designated for publication). "A deficiency of one form of proof—say, a defective written stipulation of evidence . . . or written judicial confession—may be compensated for by other competent evidence in the record." *Menefee*, 287 S.W.3d at 14. Additionally, we may consider the entire proceeding, including sentencing, to determine whether there was sufficient evidence to substantiate a defendant's guilt. *See Galindo v. State*, 564 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also Rubio v. State*, No. 05-17-00621-CR, 2018 WL 3424362, at *2 (Tex. App.—Dallas July 16, 2018, pet. ref'd) (mem. op., not designated for publication) ("In cases where the defendant waives his right to a jury and enters a guilty plea, there are no longer distinct guilt-innocence and punishment phases of a trial, and both are instead consolidated into one proceeding." (citing *Barfield v. State*, 63 S.W.3d 446, 449–50 (Tex. Crim. App. 2001))). "A conviction rendered without sufficient evidence to support a guilty plea constitutes trial error." *Menefee*, 287 S.W.3d at 14.

A person commits the offense of manslaughter if he "recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04. As indicted in this case, a person commits the offense of aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly causes serious bodily injury to a person whose relationship to or association with the defendant is described by §§ 71.0021(b), 71.003, or 71.005 of the

family code, while using or exhibiting a deadly weapon. *Id.* § 22.02. In this case, the indictment tracked the language of both statutes and alleged as follows:

[Count One: Aggravated Assault]

[Campos] intentionally, knowingly, or recklessly cause[d] serious bodily injury to Monica Trevino, by shooting her with a firearm, and [Campos] did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault, and Monica Trevino was a member of the defendant's family, as described by Sectlon 71.003 of the Texas Family Code or a person with whom the defendant had or ha[s] had a dating relationship as described by Section 71.0021(b) of the Texas Family Code . . . .

. . . .

[Count Two: Manslaughter]

[Campos] recklessly cause[d] the death of an individual, namely, an unborn child in gestation in Monica Trevino, by shooting Monica Trevino with a firearm . . . .

Without objection, Campos's signed judicial confession and stipulation of evidence was admitted into evidence at the plea hearing, wherein Campos judicially confessed he "committed each and every element of every offense alleged in the indictment or information." *See* TEX. PENAL CODE ANN. §§ 19.04, 22.02(b)(1); *see also Sikes v. State*, No. 05-20-01126-CR, 2022 WL 1769115, at *2 (Tex. App.—Dallas June 1, 2022, no pet.) (mem. op., not designated for publication) (concluding appellant's written judicial confession, which stated that "he committed 'each and every allegation' contained in the indictment and that he is 'guilty of the offense alleged,'" was sufficient evidence to support his conviction); *Jones v. State*, No. 13-19-00134-CR, 2020 WL 1467150, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 26, 2020, no pet.) (mem. op., not designated for publication) ("Where, as here, the defendant specifically states in his judicial confession

9

and stipulation to discovery that he has reviewed and acknowledged the 'documents, reports, and information attached' and the attached indictment sets out the relevant elements of the offense, evidence supporting a guilty plea has been satisfied."); *Reese*, 2015 WL 4381223, at *4 ("When the judicial confession states, 'I have read the indictment or information filed in this case and I committed each and every act alleged therein,' the judicial confession standing alone is sufficient to support a guilty plea."). Campos further orally testified that he understood the allegations against him and admitted his culpability regarding the charges.

Even if we were to conclude that Campos's signed stipulation of evidence and judicial confession were deficient because the document was, as Campos avers, not sworn and "conclusory" in that it failed to specifically list every element of the indicted offenses, there is other competent evidence in the record to compensate for the deficiency, including the guilt/innocence phase evidence and the sentencing phase evidence. *See Menefee*, 287 S.W.3d at 14; *see also Reese*, 2015 WL 4381223, at *4 (considering sentencing phase evidence and noting that "[A]rticle 1.15 contains no requirement that a judicial confession be sworn"). There is no dispute that Campos handled the weapon that shot Trevino on July 20, 2018, resulting in her hospitalization and their child's death. Trevino opined that Campos shot her in an attempt to end the relationship following bouts of infidelity and continued volatility. Text messages exchanged between Campos and Trevino in the months leading up to the shooting substantiated several of Trevino's allegations. Although during his sentencing hearing, Campos denied pulling the trigger—contrary to his prior recorded statements to police—

10

Campos nonetheless acknowledged that he had been "reckless" in his handling of the assault rifle that evening, and we may not disturb the trial court's resolutions of conflicting testimony. *See Menefee*, 287 S.W.3d at 13–14*; see also Cordil-Cortinas v. State*, No. 13-14-00750-CR, 2015 WL 7023774, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 12, 2015, no pet.) (mem. op., not designated for publication) ("The supporting evidence must embrace each essential element of the charged offense but need not establish the defendant's guilt beyond a reasonable doubt."); *Blakely v. State*, No. 13-13-00199-CR, 2014 WL 895486, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 23, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that a defendant's equivocation on an element "at certain points during the proceedings was a matter of credibility for the trial court, as trier of fact, to resolve, and we find no reason to disturb its resolution on appeal").

Accordingly, we conclude the State submitted evidence substantiating all essential elements of the charged offenses, and the evidence is sufficient under Article 1.15 to support the convictions. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15; *Menefee*, 287 S.W.3d at 14. We overrule Campos's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
2nd day of March, 2023.

11